STATE of Iowa, Appellee,

v.

William Walter DEAN, Appellant.

No. 67913.

Supreme Court of Iowa.

April 20, 1983.

Francis C. Hoyt, Jr., Appellate Defender, and Raymond E. Rogers and Patrick R. Grady, Asst. Appellate Defenders, for appellant.

Thomas J. Miller, Atty. Gen., Joseph P. Weeg, Asst. Atty. Gen., and Patrick C. McCormick, County Atty., for appellee.

Considered by REYNOLDSON, C.J., and HARRIS, McCORMICK, LARSON, and SCHULTZ, JJ.

REYNOLDSON, Chief Justice.

The single issue in this appeal is whether the State's use of a discovery deposition violated defendant's sixth amendment right of confrontation. A jury found defendant guilty of second-degree robbery, a violation of Iowa Code sections 711.1 and 711.3. He appeals and we reverse and remand for new trial.

From the evidence the jury readily could have found defendant and an accomplice, Teresa J. Smith, "rolled" Duane Johnson near a Sioux City tavern on May 29, 1981. Sioux City police officer Heibel testified he watched the incident through binoculars from an unmarked car parked down the street. Defendant held Johnson while Smith took the latter's billfold. When Johnson tried to follow her, defendant threw him to the ground. Heibel drove his police car in front of defendant and Smith, who turned in the opposite direction. Smith removed the billfold from her dress and handed it to defendant. Defendant threw it in the doorway of a building, then ran back, removed some money from the billfold and ran away from the officer. Defendant was apprehended a few minutes later. "Wadded up" in his pants pocket were one 50, thirteen 10, and two one-dollar bills.

On the witness stand, Johnson, the victim, admitted he was drunk at the time. Earlier he had cashed a $198.05 paycheck at Marty's Tap, receiving one 50, two 20, and "mostly ten" dollar bills. At the time of the robbery he recalled having approximately $180 left, in a fifty and a number of ten dollar bills. Johnson did not remember defendant holding him while Smith took his billfold, but did remember defendant pushing him to the ground as he attempted to follow her.

The State listed Mark Allard, the bartender at Marty's Tap who cashed Johnson's paycheck, as a witness on the trial information jointly filed against defendant and Smith. Smith's counsel took Allard's pretrial discovery deposition. Defendant's counsel was given notice, but did not attend because of a prior commitment. At the time he stated he would review the transcript and if he had additional questions he would request opportunity for an additional deposition. The court file reflects defendant's counsel received a copy of the deposition August 20, 1981, several weeks before trial. He made no arrangements to depose Allard further.

Allard testified on deposition he had cashed Johnson's paycheck, giving him one fifty-dollar bill, "ten tens, two twenties and three ones."

September 9, 1981, the clerk issued a subpoena for Allard to appear and testify at the trial on September 16, 1981. The service copy of this subpoena was filed September 15, 1981, accompanied by a deputy sheriff's "Officer's Diligent Search Return." This form return stated the deputy had made a diligent search of Woodbury County and was unable to find Allard. Further, "Our information indicates subject may be located at *Out of State Fishing.*"

At trial the prosecutor requested the court to take judicial notice of the above subpoena, service copy, and return. Defendant made no objection. The prosecutor requested permission to use the deposition in lieu of Allard's live testimony. Defendant objected this would constitute hearsay and violate defendant's "Constitutional rights of confrontation."

Trial court made the following ruling:

And I am satisfied, first, that the State has made reasonable efforts to attempt to obtain the presence of Allard, and that is shown by the return on the subpoena; and second, satisfied that the defendant had opportunity to take or be present at the deposition; that the reason he was not was because it was determined, first, that it would be satisfactory to proceed later with additional questioning, and

that after counsel had read and reviewed the deposition it was determined that further questioning would not be necessary.

So consequently, the State's application to be permitted to use the deposition is granted. Defendant's objection to use of the deposition is overruled.

I will, under these circumstances, if the defendant requests, allow the defendant a continuance to attempt independently to obtain the presence of the as-now unavailable witness, since the defendant is just now learning definitely that the deposition will be allowed.

After Allard's deposition was read to the jury, defense counsel, in the jury's absence, volunteered that he had reviewed the deposition and did not wish a continuance "to attempt to locate or attempt to take Mark Allard's deposition."

Defendant testified he was "going together" with Smith. On the evening in question, he took her to the vicinity of several taverns, where they separated. Later he, Smith and Johnson were in front of one of the taverns. Johnson was belligerent and "grabbed" Smith, defendant sought to part them and Johnson went down. Defendant further testified he walked after Smith. When Heibel got out of his car and started walking toward them, Smith tried to stick a billfold down in her dress. Defendant took the billfold and threw it down by Johnson. He denied he took any money from the billfold and testified that although he ran from Heibel because he was scared, he later returned voluntarily. He insisted he did not know Smith had taken the billfold, but when he saw it he assumed she had taken it from Johnson. Defendant testified the money found in his pocket was his, earned in part by working for his father who fixed vacuum cleaners in his home.

After the jury retired to deliberate, they made a written request for the Allard deposition. Trial court refused this request.

■ I. Appealing, defendant contends use of Allard's deposition violated his sixth amendment confrontation right. Because a constitutional right is implicated, we make an independent evaluation of the totality of the relevant circumstances disclosed by the entire record and thus review the evidence de novo. *State v. Boone,* 298 N.W.2d 335, 337–38 (Iowa 1980).

■ The sixth amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." United States Const. amend. VI. The primary interest thus secured is the right of cross-examination. *State v. Froning,* 328 N.W.2d 333, 336 (Iowa 1982); *State v. Davis,* 269 N.W.2d 434, 438 (Iowa 1978); *see California v. Green,* 399 U.S. 149, 156–58, 90 S.Ct. 1930, 1934–35, 26 L.Ed.2d 489, 495–97 (1970).

■ Although the United States Supreme Court has recognized an exception to the confrontation requirement where the witness is unavailable, it has held a witness is not unavailable "unless the prosecutorial authorities have made a *good-faith effort* to obtain his presence at trial." *Barber v. Page,* 390 U.S. 719, 724–25, 88 S.Ct. 1318, 1322, 20 L.Ed.2d 255, 260 (1968) (emphasis added). The prosecution bears the burden of establishing this predicate. *Ohio v. Roberts,* 448 U.S. 56, 74–75, 100 S.Ct. 2531, 2543, 65 L.Ed.2d 597, 613 (1980).

■ In an opinion filed after this trial, *State v. Zaehringer,* 325 N.W.2d 754, 759 (Iowa 1982), we summarized the Supreme Court's stringent requirements on the prosecution to locate and secure the witness for trial before using prior testimony. *See Roberts,* 448 U.S. at 75, 100 S.Ct. at 2544, 65 L.Ed.2d at 613–14; *Mancusi v. Stubbs,* 408 U.S. 204, 212, 92 S.Ct. 2308, 2313, 33 L.Ed.2d 293, 300–01 (1972); *Barber,* 390 U.S. at 723–24, 88 S.Ct. at 1321, 20 L.Ed.2d at 259–60. In this case the only evidence of the State's effort was the return of an unserved subpoena issued six days before trial. A printed "Diligent Search" form recited Allard could not be found in the county, he was "Out of State Fishing." No one took the stand to provide evidence of constitutionally sufficient efforts to locate him and return him for trial.

Here the State introduced no evidence regarding its efforts in attempting to produce the witness for trial. Rather, the record reflects only unsubstantiated arguments and statement of counsel. *Zaehringer,* 325 N.W.2d at 759. We hold, as we indicated in *Zaehringer,* that due diligence requires more than the issuance of a subpoena and the return of it not found. *See Green v. State,* 579 P.2d 14, 18 (Alaska 1978); *Looper v. State,* 270 Ark. 376, 380, 605 S.W.2d 490, 493 (Ct.App.1980); *Lavicky v. State,* 632 P.2d 1234, 1238 (Okla.Crim. App.1981).

II. The State argues that even if a good faith effort has not been shown, defendant waived his confrontation right by rejecting trial court's offer to grant him a continuance.

 Waiver is "an intentional relinquishment or abandonment of a known right or privilege." *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461, 1466 (1938); *State v. Fetters,* 202 N.W.2d 84, 89 (Iowa 1972); *accord Iowa Grain v. Farmers Grain & Feed Co.,* 293 N.W.2d 22, 25 (Iowa 1980). In this case there is no indication that, by declining trial court's offer, defendant evinced an "intentional relinquishment or abandonment" of his right to confront the witness Allard. It was not defendant's burden to find Allard, or to cross-examine him on deposition. The burden to produce this witness was on the State, which under the circumstances had reason to seek a continuance, but failed to seek one.

 III. Finally, we have considered whether the error in admitting Allard's deposition was harmless beyond a reasonable doubt. *See Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). The evidence against this defendant was strong. Defendant's version of the incident was unpersuasive, his responses on cross-examination evasive.

On the other hand, Allard's deposition testimony indirectly corroborated officer Heibel's statement that he saw defendant remove the money from Johnson's billfold.

The jury's request for the deposition during its deliberations is an indication the deposition may have played a role in the guilty verdict.

Although the question is close, we cannot find the error was harmless beyond a reasonable doubt. The district court judgment must be reversed and this case remanded for new trial.

REVERSED AND REMANDED.